IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ALIVE CHURCH OF THE NAZARENE,                )
INC.,                                        )
                                             )
          Plaintiff,                         )
                                             )        1:21-cv-891 (LMB/JFA)
     v.                                      )
                                             )
PRINCE WILLIAM COUNTY, VIRGINIA,             )
                                             )
          Defendant.                         )

## MEMORANDUM OPINION

Before the Court is defendant Prince William County's Motion to Dismiss the six-count

complaint filed by plaintiff Alive Church of the Nazarene, Inc. ("plaintiff" or "the Church"),

which alleges that defendant's land-use restrictions both facially and as applied to plaintiff

violate the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc et seq.,

the Free Exercise and Freedom of Assembly Clauses of the First Amendment, and the Equal

Protection Clause of the Fourteenth Amendment.  The motion has been fully briefed and oral

argument has been held.  For the reasons explained in this opinion, defendant's Motion to

Dismiss [Dkt. No. 15] will be granted.

## I. BACKGROUND

**A. Legal Background**

Virginia law permits localities to "regulate, restrict, permit, prohibit, and determine . . .

[t]he use of land, buildings, structures and other premises for agricultural, business, industrial,

residential, flood plain and other specific uses . . . ."  Va. Code Ann. § 15.2-2280(1) (West

2021).  Pursuant to this authority, defendant Prince William County ("defendant" or "the

County") has designated the area in which the Church's property is located as an "A-1,

Agricultural Zoning District" ("the A-1 Zoning District").  Prince William County Code §§ 32-200.01, -301.01; [Dkt. No. 1] at ¶ 20.   As its name suggests, the A-1 Zoning District is dedicated to agriculture.  It is "designed to encourage conservation and proper use of large tracts of real property in order to assure available sources of agricultural products" and "open spaces within reach of concentrations of population."  Prince William County Code § 32-301.01.  The "intent is to . . . create an environment favorable for the continuation [of] farming and other agricultural pursuits" and to "preserve prime agricultural land."  Id.

Within the A-1 Zoning District, the County permits some uses by right and others only with a Special Use Permit ("SUP").[1]  Compare id. § 32-301.02 ("Uses permitted by right"), with id. § 32-301.04 ("Special uses").  Among the uses permitted by right are "farm wineries" and "breweries with limited brewery licenses."  Id. § 32-301.02.  By definition, "farm wineries" and "breweries with limited brewery licenses" are located on farms which grow the ingredients— whether grapes or hops—on site.  Id. § 32-100 (defining "farm winery"); Va. Code Ann. § 4.1-208(A)(2) (defining "limited brewery license"); see also Va. Code Ann. § 4.1-100 (defining "farm winery").  The County permits a subset of farm wineries and limited-license breweries— those located on ten acres or more—to hold "special events," including "meetings, conferences, banquets, dinners, wedding receptions, private parties and other events conducted for the purpose of marketing wine, mead, cider and similar beverages and/or beer, produced on the premises."  Prince William Code § 32-300.07(10)(b)(ii).  "Music, art, or other entertainment and cultural activities" are "allowed as accessory activities to a special event."  Id. § 32-300.07(10)(b)(iii).

---

[1] The Church's challenge focuses on these particular provisions of the County's zoning ordinance.

Similarly, "production agriculture," "agritourism activities," and "other activities or events that are usual and customary at Virginia agricultural operations" are generally permitted in the A-1 Zoning District without a SUP.  Va. Code. Ann. §§ 15.2-2288, -2288.6(A)(1)-(4).  "Production agriculture" is the "bona fide production or harvesting of agricultural products."  Id. § 15.2-2288.  An "agritourism activity" is "any activity carried out on a farm or ranch that allows members of the general public, for recreational, entertainment, or educational purposes, to view or enjoy rural activities, including farming, wineries, ranching, horseback riding, historical, cultural, harvest-your-own activities, or natural activities and attractions," regardless of whether the "participant paid to participate in the activity."  Id. § 3.2-6400.

In contrast, a SUP is generally required to conduct non-agricultural uses in the A-1 Zoning District.  Section 32-301.04 lists thirty-five uses that are permitted with a SUP, including adult day-care facilities, airports, bed and breakfasts, cemeteries, child-care facilities, civic clubs, commercial recreation facilities, community operated parks and pools, country clubs, garden centers, paintball facilities, petting farms, and private schools.  Prince William Code § 32-301.04.  Included in this list are "religious institution[s] or place[s] of religious worship."  Id. § 32-301.04(26); see also id. § 32-300.07(7).

**B.  Factual Background**

Because the motion at issue is a motion to dismiss, the Court has "accept[ed] as true all well-pleaded facts in [the] complaint and construe[s] them in the light most favorable to the plaintiff."  Lucero v. Early, 873 F.3d 466, 469 (4th Cir. 2017) (quoting Matherly v. Andrews, 859 F.3d 264, 274 (4th Cir. 2017)).  The relevant facts include the following.

Plaintiff is a congregation of approximately 250 members located in Nokesville, Virginia.  [Dkt. No. 1] at ¶¶ 15-16, 20.  In November 2018, the Church purchased the property at issue in

3

this litigation, which is a lot of roughly 17.5 acres located in an A-1 Zoning District in Prince William County.  Id. at ¶ 20.  On the property is a single-family home and several detached accessory structures.  Id. at ¶ 21.  The Church bought the property from another church, which had obtained a SUP in September 2013 "to allow a 40,000 sq. ft. religious institution with related facilities, including a child care [sic] facility with a maximum of 100 children."  Id. at ¶ 23.  The SUP listed several conditions, including "establishing a 30 foot wide [sic] landscape buffer with hundreds of plants, building water retention areas, stormwater management," constructing long turn lanes into the property, and restricting the size of the buildings.  Id. at ¶ 24.  The Church claims that complying with the conditions would cost "hundreds of thousands of dollars," which it does not currently have.  Id. at ¶ 25.  Nonetheless, the Church "intends to ultimately fulfill the SUP requirements . . . when it can afford to."  Id. at ¶ 26.

In the meantime, the Church has looked for ways to hold religious gatherings on the property.  Because it could not meet on its property until it complied with the SUP conditions, it had been meeting at a school; however, after the school closed due to the COVID-19 pandemic, the Church was forced to meet elsewhere.  Id. at ¶¶ 28-30.  As a result, it started holding religious services "in a farm winery/brewery."  Id. at ¶ 32.  This motivated Allen Perdue, the Church's pastor, "to apply for the same zoning status as a farm winery/brewery that would enable it to meet for religious worship on its Property."  Id. at ¶ 33.  In February 2021, the Church asked the Zoning Administrator to permit it to use the property for a bona fide agricultural use—"to grow fruit trees, to make non-alcoholic apple cider, and to open itself to the public for the purpose of religious worship and outreach as a church."  Id. at ¶¶ 35-36.

Later that month, the Zoning Administrator approved the Church's request;[2] however, the approval letter also stated that because "A-1 zoned Property cannot have two principal uses, once commenced the identified bona fide agricultural use of the Property will be deemed the principal use of the Property . . . ." Id. at Ex. B.  As a result, "[t]he bona fide agricultural use would not allow any other use of the Property, and would not allow any structures that are not associated with the permitted bona fide agricultural use to be located on the Property." Id.  The letter continued: "Pursuant to Section 32-300.07(10)(b)(ii) of the Zoning Ordinance, events such as weddings, wedding receptions, corporate parties/meetings, conferences[,] banquets, dinners, and private parties would not be permitted to occur on the Property . . . until the required farm winery or brewery license is issued for the Property by the Virginia Alcoholic Beverage Control (ABC) Board or in accordance with an issued temporary activity permit...." Id. at ¶¶ 37-38, Ex. B.

Although the Church made initial steps to obtain an ABC license, it "came to the conclusion that obtaining an ABC License would violate its religious beliefs against the sale or promotion of alcohol even if the Church was producing only nonalcoholic beverages." Id. at ¶¶ 39, 44.  Consequently, the Church has not been able to hold religious gatherings on its property.

On August 3, 2021, the Church filed the pending complaint ("the Complaint") against the County for declaratory, injunctive, and monetary relief.  The Complaint alleges six causes of action: Counts 1-3 raise claims under the Religious Land Use and Institutionalized Persons Act

---

[2]  According to the Zoning Administrator's approval letter, "You have stated in your request letter that such principal agricultural use of the Property would consist of agricultural products that are grown and harvested on the Property and the on-site retail sale of those products from the Property (i.e.[,] Christmas trees, fruit trees, and pumpkins).  This outlined use . . . would be deemed permitted by right...." [Dkt. No. 1] at Ex. B.

("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., Counts 4 and 5 raise claims under the First Amendment, and Count 6 raises a claim under the Fourteenth Amendment.  [Dkt. No. 1.]

## II. DISCUSSION

### A. **Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017).  A complaint must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (internal quotation marks and citations omitted).  When deciding a motion to dismiss, the court assumes that the facts alleged in the complaint are true and resolves factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009); however, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences.  Id.

### B. **Analysis**

Before addressing each count of the Complaint, the parties raise two threshold issues.  First, the County argues that the Church lacks standing.  Second, the Church argues that the Court should not consider the extraneous evidence that the County attached to its motion.  The evidence at issue consists of the Church's SUP (the County claims the Church only attached a draft SUP to the Complaint), letters between the Zoning Administrator and the Church or the Church's attorney regarding zoning determinations, and a document titled "List of zoning districts where religious institutions are permitted."

The second issue can be dealt with summarily.  In deciding a motion to dismiss, the Court generally evaluates only the complaint and "[d]ocuments attached or incorporated into the complaint," E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 448-49 (4th Cir. 2011), but it "may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity," Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).  Here, it is appropriate to consider the document that the County claims is the operative SUP, as it is certainly integral to the Complaint and the Church does not dispute its authenticity; however, the Court will not consider the County's other exhibits.  The Church's claims do not necessarily "turn on" statements in the County's letters or the summary of zoning districts, which appears to have been created for use in this litigation.  See id.

The standing issue requires more analysis.  To establish standing, the Church must establish that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"  Id. (quoting Lujan, 504 U.S. at 560).

The County argues the Church has not sufficiently pleaded an injury in fact, because the Church has not been denied anything.  Specifically, it has neither been excluded from the A-1 Zoning District nor denied the right to hold religious gatherings.  It can hold as many religious services as it would like once it complies with the SUP, which the Church cannot claim imposes unreasonable requirements given its admission that it "intends to ultimately fulfill the SUP

7

requirements . . . when it can afford to." [Dkt. No. 1] at ¶ 26. In response, the Church argues

that the injury is its inability to hold religious gatherings on the property now, because it cannot

afford to comply with the SUP's conditions. The County responds that the harm described by

the Church is attributable to the Church, which voluntarily and intentionally bought the land in

part because it had the very SUP about which it now complains.

The zoning ordinance only allows the Church to hold typical religious gatherings—i.e.,

religious services unconnected to agricultural production—in the A-1 Zoning District if it

complies with a set of specific conditions which will involve some expense. Even if the Church

may ultimately comply with those conditions, and even if the Church voluntarily undertook those

conditions, the Church sufficiently alleges that it has to incur greater expense than farm wineries

and breweries to hold similar types of gatherings. See, e.g., [Dkt. No. 1] at ¶ 59 ("If Alive

Church were to establish itself as a winery or brewery, . . . it would not have to now expend

hundreds of thousands of dollars on stormwater management, curbs and guttering, roads,

etc...."). That injury is directly traceable to the County's zoning ordinance, which classifies the

Church as a "special use." Prince William County Code § 32-301.04(26); see also id. § 32-

300.07(7). Because this alleged monetary burden underlies each claim, the Court is satisfied

plaintiff has standing to assert the claims in the Complaint. Town of Chester v. Laroe Ests., Inc.,

137 S. Ct. 1645, 1650 (2017) ("[A] plaintiff must demonstrate standing for each claim he seeks

to press and for each form of relief that is sought." (quoting Davis v. Fed. Election Comm'n, 554

U.S. 724, 734 (2008)).

1. Count I

In Count I, the Church alleges that the County violated RLUIPA's "equal terms"

provision by requiring the Church to obtain a SUP to host gatherings while permitting

"nonreligious breweries and wineries" to host similar gatherings without a SUP. [Dkt. No. 1] at ¶ 94. RLUIPA's "equal terms" provision provides that "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). Although the Fourth Circuit has yet to apply this provision, several district courts in the Fourth Circuit—and the parties here—agree that a prima facie case under this provision has four elements: "(1) the plaintiff [is] a religious assembly or institution, (2) subject to a land use regulation, and (3) the regulation treat[s] the religious assembly on less than equal terms than (4) a nonreligious assembly or institution." E.g., Hunt Valley Baptist Church, Inc. v. Baltimore Cnty., No. SAG-17-0804, 2020 WL 618662, at *10 (D. Md. Feb. 10, 2020) (quoting Redemption Cmty. Church v. City of Laurel, 333 F. Supp. 3d 521, 531 (D. Md. 2018)).

The focus here falls on the third and fourth elements, as the Church unquestionably satisfies the first two—i.e., it is a religious assembly subject to a land use regulation. Before determining whether the Church is treated on less equal terms than a nonreligious entity, the Court must first determine which nonreligious entity is the appropriate comparator. The Church argues that comparing the Church to limited-license breweries and farm wineries is appropriate, because the Church could produce, sell, and serve drinks similar to those breweries and wineries in all ways but one—the Church's drinks would be exclusively nonalcoholic. The County argues that the more appropriate comparators are institutions who wish to use property in the A-1 Zoning District primarily for non-agricultural purposes.

Several circuits have articulated different approaches to identify a relevant secular comparator.[3]  Although the approaches slightly vary, "they all generally require that the comparators be similarly situated with respect to the purpose of the underlying regulation." Signs for Jesus v. Town of Pembroke, 977 F.3d 93, 109 (1st Cir. 2020).  The Church does not appear to argue that a materially different approach applies.  See [Dkt. No. 22] at 16 ("In sum, the circuits may differ in their articulation of the appropriate test to be used for a RLUIPA equal terms case but the general focus is on whether the religious assembly is similarly situation [sic] to a secular assembly or institution based on the criteria that is used in the zoning code"); Tree of Life Christian Schs. v. City of Upper Arlington, 905 F.3d 357, 369 (6th Cir. 2018) (saying that the tests based on zoning "criteria" and those based on zoning "purposes" are "essentially the same").

Here, the Church alleges that the zoning ordinance, both facially and as-applied, violates the "equal terms" provision by "treat[ing] Alive Church on less than equal terms with nonreligious assemblies and institutions like wineries and breweries."  [Dkt. No. 1] at ¶ 94. Although § 32-301.04 specifically requires "religious institution[s]" and "place[s] of worship" to obtain a SUP to operate in the A-1 Zoning District, it does not single out such institutions. Rather, it included them along with thirty-four other non-agricultural entities as requiring a SUP. Even the Eleventh Circuit has recognized that "merely the mention of church or synagogue in a zoning code does not destroy a zoning code's neutrality."  Midrash Sephardi, Inc., 366 F.3d at 1232-33.  For example, in Thai Meditation Association of Alabama, Inc. v. City of Mobile, a zoning ordinance was found to be facially neutral despite requiring a "church or religious

---

[3] "The Fourth Circuit has yet to rule on this issue."  Redemption Cmty. Church, 333 F. Supp. 3d at 532.

facility" to obtain approval before locating in a residential district, because the ordinance did not "single out" churches "for unfavorable treatment"; "rather, [the ordinance] lumps them in with other non-religious entities in requiring planning approval for projects in residential districts." 980 F.3d 821, 825-26, 833 (11th Cir. 2020). Similarly, § 32-301.04 lumps "religious institution[s]" in with thirty-four other entities—all seemingly secular. It is therefore facially neutral.[4]

To resolve the as-applied challenge, the Court must find entities that are "similarly situated with respect to the purpose of the underlying regulation." In this case, this task is straightforward for two reasons. First, the purpose of the County's regulation is readily apparent, as § 32-301.01 unambiguously states that the A-1 Zoning District is intended to encourage "farming and other agricultural pursuits." Second, finding entities "similarly situated" with respect to this purpose is just as apparent, because § 32-301.04 does exactly that: it lists thirty-five uses, including "religious institution[s]," all of which require a SUP to operate in the A-1 Zoning District, presumably because they are not agricultural and therefore do not advance the zone's purpose. In other words, the zoning ordinance speaks for itself: the Church's statutory companions—such as child-care facilities and civic clubs—should be the proper comparators.

Instructive on this point is River of Life Kingdom Ministries v. Village of Hazel Crest, where an ordinance designated a part of Hazel Crest as commercial and, to stimulate economic recovery, "exclude[d] churches along with community centers, meeting halls, and libraries

---

[4] As a result, the Court does not need to consider the Eleventh Circuit's unique approach to facially discriminatory ordinances. See Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1308-09 (11th Cir. 2006). The Eleventh Circuit also has a unique approach for facially neutral ordinances that are religious "gerrymanders"—that is, ordinances that "separate[] permissible from impermissible assemblies or institutions in a way that burdens 'almost only' religious uses"—but the Church does not allege that with respect to the County's ordinance. Id. at 1309-10.

because these secular assemblies, like churches," did not aid in that purpose—i.e., they "d[id] not generate significant taxable revenue or offer shopping opportunities." 611 F.3d 367, 368, 373 (7th Cir. 2010). Accordingly, when a church challenged the ordinance under the "equal terms" provision, the Seventh Circuit used noncommercial assemblies as the similarly situated comparators and found that the ordinance did not violate the "equal terms" provision. Id. at 373-74.

Just as the Seventh Circuit compared noncommercial assemblies, it is appropriate for this Court to compare nonagricultural entities. The Church argues that such a comparison is wrong, and that it should be compared to farm wineries and limited-license breweries because it, like farm wineries and limited-license breweries, is "engaging in bona fide agricultural uses." Indeed, the Church alleges that it got approval to use the property "to grow fruit trees" and "make non-alcoholic apple cider." Even so, this does not make the comparison to civic clubs and child-care facilities inapt. It just means that instead of comparing the Church to a generic civic club, the Church must be compared to a civic club that, like the Church, is engaged in bona fide agricultural uses.[5] If the County permitted such a civic club to hold gatherings while denying the same to the Church, the Church would state an "equal terms" claim; however, the Church has alleged nothing of the sort. It has not alleged that the County has treated it any differently than a civic club or child-care facility or any other entity listed in § 32-301.04. Accordingly, it has failed to state an "equal terms" claim.

_____

[5] Similarly, the Church argues that it "wants to operate agricultural uses on its land that are also religious." [Dkt. No. 22] at 9. That does not change the fact that religious institutions are not agricultural by definition and must therefore get permission to operate in the A-1 Zoning District. In contrast, farm wineries and limited-license breweries are allowed in the district by right because they are, by definition, agricultural.

2. Count II

In Count II, the Church alleges that the County also violated RLUIPA's "nondiscrimination" provision, which states, "No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). To apply this provision, "courts have looked to equal protection precedent," which requires a plaintiff to "demonstrate that the government decision was motivated at least in part by discriminatory intent." Jesus Christ is the Answer Ministries, Inc. v. Baltimore Cnty., 915 F.3d 256, 262-63 (4th Cir. 2019). Although the Complaint does not allege a discriminatory intent, the Church argues that "intent may be inferred from the treatment itself," as well as the Zoning Administrator's statement that the Church needed an ABC license if it intended to hold gatherings and events on its Property. [Dkt. No. 22] at 19-20.

Discriminatory intent can certainly be inferred, see Village of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265 (1977), but not on the facts alleged here. First, the allegation of "disparate treatment" is empty, because although the Church alleges it was treated differently than farm wineries and limited-license breweries, it does not allege that it was treated differently than similarly situated nonagricultural entities.[6] Second, the probative value of the County's letter is similarly weak, even when construed in a light most favorable to the plaintiff.

---

[6] The County approaches this issue as if the Church alleged disparate impact, not disparate treatment; however, the Complaint does not mention "impact" in the context of the "nondiscrimination" claim. Even if it did, such an allegation would fail to state a claim, because it is only where the impact is "stark" that the impact alone can signal discriminatory intent. See Village of Arlington Heights, 429 U.S. at 266 ("Absent a pattern as stark as that in Gomillion[ v. Lightfoot, 364 U.S. 339 (1960)] or Yick Wo[ v. Hopkins, 118 U.S. 356 (1886)], impact alone is not determinative, and the Court must look to other evidence." (internal footnote omitted)). The Church does not allege that type of "stark" pattern.

On its face, the Zoning Administrator's letter does not evidence any religious animus. Moreover, the Church does not allege that the Zoning Administrator said anything inconsistent with the ordinance itself. After all, obtaining an ABC license to become a farm winery or limited-license brewery is indeed one, but not the only, way to "have as many events as you want" in the A-1 Zoning District. [Dkt. No. 1] at ¶ 34. Viewed in this light, the Church's dispute is not with the County Administrator's words, but with the law itself. The Church therefore has not alleged sufficient facts to make a plausible claim of discriminatory intent and therefore fails to state a claim under RLUIPA's "nondiscrimination" provision.

### 3. Count III

In Count III, the Church alleges that requiring a SUP to hold religious gatherings violates RLUIPA's "substantial burden" provision. That provision states, "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates" that burden "is the least restrictive means of furthering" a "compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). In applying this provision, the Fourth Circuit has said that "a plaintiff . . . must show that a government's imposition of a regulation regarding land use, or application of such a regulation, caused a hardship that substantially affected the plaintiff's right of religious exercise." Andon, LLC v. City of Newport News, 813 F.3d 510, 514 (4th Cir. 2016).

A substantial burden can result when the government interferes with a plaintiff's reasonable expectation to use property for religious purposes. For example, the religious organization in Bethel World Outreach Ministries v. Montgomery County Council stated a "substantial burden" claim where it acquired property to construct a church, which it was

initially permitted to do, but the county subsequently amended its ordinances—twice—to completely prevent the church's construction. 706 F.3d 548, 553-55, 557-59 (4th Cir. 2013). In contrast, the plaintiffs in Andon, LLC failed to state a "substantial burden" claim where they were denied a variance that would have allowed them to build a church on property zoned for commercial use, because they acquired the property knowing that it was non-conforming and that a variance was not guaranteed. 813 F.3d at 512-13, 515. Accordingly, "the alleged burdens they sustained were not imposed by the BZA's action denying the variance, but were self-imposed hardships." Id. at 515.

Here, when the Church purchased the property in 2018, it did so knowing the property was subject to a SUP. In fact, the Church admits in its opposition brief that "[i]t purposely paid more for the land because it had a SUP." [Dkt. No. 22] at 22 (emphasis in original). Consequently, the Church stands in similar shoes as the plaintiffs in Andon, LLC, who bought property knowing it had to obtain a variance. The Church was not initially permitted to hold religious gatherings on its property with no strings attached, as the plaintiff was in Bethel. Its inability to hold gatherings now, before it satisfies the SUP's conditions, therefore cannot be attributed to the County. It is a self-imposed hardship. In addition, allowing the Church to circumvent the requirements of the SUP even though it does not satisfy the statutory requirements to become a farm winery or limited-license brewery would "effectively . . . grant[] an automatic exemption to religious organizations from generally applicable land use regulations" and "favor religious uses over secular uses." Andon, LLC, 813 F.3d at 516. The law does not support such a result.

### 4. Count IV

Count IV alleges that the County violated the Church's free exercise rights under the United States Constitution.  This claim's fate is predestined by the failure of the RLUIPA claims, because "RLUIPA provides more protection for a religious exercise than the Free Exercise Clause." Friends of Lubavitch v. Baltimore Cnty., No. GLR-18-3943, 2021 WL 2260287, at *9 (D. Md. June 3, 2021); see also Lovelace v. Lee, 472 F.3d 174, 198 (4th Cir. 2006) ("RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise.").  Even if RLUIPA is not dispositive of the free exercise claim, the Complaint still fails to state a claim adequately.

"Under the Free Exercise Clause, 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" Bethel World Outreach Ministries, 706 F.3d at 561 (quoting Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993)). A law is not neutral if its "object . . . is to infringe upon or restrict practices because of their religious motivation." Id. (quoting Church of the Lukumi Babalu Aye, Inc., 508 U.S. at 533).

"To determine the object of a law, we must begin with its text...." Church of the Lukumi Babalu Aye, Inc., 508 U.S. at 533.  Section 32-301.04 restricts not just "[r]eligious institution[s] or place[s] of religious worship," but thirty-four other uses, including shooting ranges, homeless shelters, and paintball facilities.  In other words, religious entities are "lump[ed] in with other non-religious entities in requiring planning approval," which is strongly indicative of a facially neutral statute. Thai Meditation Ass'n of Ala., Inc., 980 F.3d at 833 (analyzing facial neutrality in the context of a RLUIPA "equal terms" claim).  Although "[f]acial neutrality is not determinative," Church of the Lukumi Babalu Aye, Inc., 508 U.S. at 534, the Complaint does not

allege any other facts indicating that when the County enacted the A-1 Zoning District's regulations, it did so "to infringe upon or restrict" religious practices. The regulations, therefore, are neutral laws of general applicability.

Accordingly, the Court must apply rational basis scrutiny and determine whether the regulations are "rationally related to a legitimate government interest." Bethel World Outreach Ministries, 706 F.3d at 561 (quoting Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 649 (10th Cir. 2006)). The Church argues that the County has "put forth absolutely no rational reason for treating a church differently simply because it cannot obtain an alcohol license." [Dkt. No. 22] at 25. Not so. The very purpose of the A-1 Zoning District is to prioritize "farming and other agricultural pursuits," which the Fourth Circuit has recognized is a legitimate government interest. Id. ("Limiting the development of the agricultural reserve is a legitimate governmental interest…."); see also Sylvia Dev. Corp. v. Calvert Cnty., 48 F.3d 810, 821 n.3 (4th Cir. 1995) ("[I]t is presumably a legitimate governmental purpose to preserve the rural nature of a community and to maintain its aesthetic and functional characteristics through zoning requirements."). Requiring "religious institutions" to get permission to operate in the A-1 Zoning District is rationally related to this legitimate interest, because religious institutions generally are not agricultural. Of course, the Church would presumably argue that it is not a typical church (or, at least, it does not have to be a typical church). This argument effectively asks the Court to apply intermediate rather than rational basis scrutiny. After all, the Church is alleging, in effect, that the zoning ordinance is not narrowly tailored to promote the A-1 Zoning District's agricultural purpose, because it restricts Churches engaged in some sort of agricultural pursuit. The bar is not that high.

17

More importantly, Virginia has a legitimate interest in specifically prioritizing farm wineries and limited-license breweries within the A-1 Zoning District.  First, both, by definition, must be located on a farm, which limits their ability to locate elsewhere (a limitation the Church does not have).  Second, the Code provision governing each says, "It is the policy of the Commonwealth to preserve the economic vitality of the Virginia wine industry," and "It is the policy of the Commonwealth to preserve the economic vitality of the Virginia beer industry." Va. Code. Ann. §§ 15.2-2288.3, -2288.3:1.  Allowing these uses by right in the A-1 Zoning District is rationally related to furthering Virginia's interest in preserving the vitality of the wine and beer industry.  The Church does not allege that it will further that legitimate interest. Accordingly, the Church fails to state a free exercise claim.

    5. Count V

The Complaint also alleges that the County violated the Church's First Amendment right to peaceably assemble.  For purposes of analyzing the legal sufficiency of the claim, the Church admits "[a]t this stage of the litigation" that the A-1 Zoning District's regulations are "content neutral time, place, and manner restriction[s] that [are] subject to intermediate scrutiny."[7] [Dkt. No. 22] at 25.  Under intermediate scrutiny, "[a] content-neutral regulation of the time, place, and manner of speech is generally valid if it furthers a substantial government interest, is narrowly tailored to further that interest, and leaves open ample alternative channels of

---

[7] Regardless of plaintiff's admission, the ordinance is content neutral.  "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989).  The Church does not allege that the County adopted the agricultural zoning ordinance because it disagreed with religious messages.

communication." <u>Am. Legion Post 7 of Durham v. City of Durham</u>, 239 F.3d 601, 609 (4th Cir. 2001).

The County argues that this claim is legally insufficient because the County has a substantial interest in promoting "farming and other agricultural pursuits," in addition to the Virginia beer and wine industry; the ordinance is narrowly tailored to further those interests by restricting—but not wholly excluding—non-agricultural uses; and the ordinance leaves open ample alternative channels of communication by permitting assemblies related to agriculture by right and assemblies unrelated to agriculture by SUP. The Court agrees.

Although the Church cursorily claims that the County has no "compelling interest" in the ordinance [Dkt. No. 1] at ¶ 136, the County need not show a "compelling" interest, only a substantial one. Showing a substantial interest is not insurmountable, as even preserving a county's aesthetics qualifies as a substantial government interest. <u>See</u> <u>Wag More Dogs, Ltd. Liab. Corp. v. Cozart</u>, 680 F.3d 359, 369 (4th Cir. 2012). Compared to that, conserving agricultural land, particularly land in the ever-growing Washington, D.C. metropolitan area, is undoubtedly a substantial government interest.

The Church's primary objection is that the County cannot demonstrate how excluding churches engaged in agricultural production furthers the goal of preserving agricultural land. This argument seems to focus on whether the zoning ordinance is narrowly tailored. The Church argues that by growing Christmas and apple trees and producing non-alcoholic cider, it is—or can become—similar to farm wineries and breweries in all respects but the ability to sell alcoholic drinks. Excluding it solely on that basis, according to the Church, does not further the purpose of the ordinance, because the Church's tree and cider production would be advancing the County's agricultural interests. The problem with this argument is that the County need not

19

show that the ordinance is the "least restrictive or least intrusive means" of promoting its goal; rather, it only needs to show that the ordinance is narrowly tailored. Rock Against Racism, 491 U.S. at 798. The ordinance is narrowly tailored precisely because it does not bar entities that primarily have a non-agricultural purpose, like the Church, from assembling in the A-1 Zoning District. Instead, it allows such entities to assemble, as long as they comply with the SUP. As such, the ordinance "[is] not substantially broader than necessary to achieve the government's interest" in preserving agricultural land. Id. at 799.

In this way, the zoning ordinance also leaves open ample channels for the Church to communicate its religious message. When it complies with the SUP, the Church can hold in-person religious gatherings on its property. Until then, it can hold in-person religious gatherings at other locations in the A-1 Zoning District—which the Church admits it had been doing. In fact, the Church's admission that it "met for religious worship services in a farm winery/brewery" demonstrates that alternative channels of communication were available.[8] [Dkt. No. 1] at ¶ 31. Although meeting at a farm winery or limited-license brewery may not be the Church's preference, "the available alternatives 'need not be the speaker's first or best choice.'" McClellan v. City of Alexandria, 363 F. Supp. 3d 665, 677 (E.D. Va. 2019) (quoting Ross v. Early, 746 F.3d 546, 559 (4th Cir. 2014)). Accordingly, the Church fails to state a claim in Count V.

      6. Count VI

In Count VI, the Church brings an equal protection claim against the County under the Fourteenth Amendment of the United States Constitution. "To succeed on an equal protection

---

[8] The Church also admits that it "had been meeting in a Prince William County school," but it is unclear from the Complaint whether the school was in the A-1 Zoning District. [Dkt. No. 1] at ¶ 28.

claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Martin v. Duffy, 858 F.3d 239, 252 (4th Cir. 2017) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).  If the plaintiff makes this initial showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Id. (quoting Morrison, 239 F.3d at 654).

The prior analysis of the RLUIPA claims dooms the equal protection claim.  As the Court has already concluded, in the context of RLUIPA's "equal terms" provision the Church is not similarly situated with farm wineries and limited-license breweries, because it is not similarly situated with respect to the purpose of the A-1 Zoning ordinance. See Signs for Jesus, 977 F.3d at 109.  In the equal protection context, "similarly situated" carries a slightly different meaning: it "means that the individuals 'are in all relevant respects alike.'" Stevens v. Holder, 966 F. Supp. 2d 622, 641 (E.D. Va. 2013) (quoting Veney v. Wyche, 293 F.3d 726, 730-31 (4th Cir. 2002)).  Nonetheless, if the Church is not similarly situated with wineries and breweries with respect to the purpose of the zoning ordinance, it cannot be the case that the Church and the wineries and breweries "are in all relevant aspects alike."  Accordingly, they are not similarly situated in either the "equal terms" or equal protection contexts.  And because the Church has not alleged that the County has treated it differently than a similarly situated institution, it has not stated an equal protection claim.  Moreover, the Church does not sufficiently allege intentional or purposeful discrimination for the reasons stated in section II.B.2. See Jesus Christ is the Answer Ministries, Inc., 915 F.3d at 262-63 (to apply RLUIPA's "nondiscrimination" provision, "courts have looked to equal protection precedent" and require plaintiffs to demonstrate "discriminatory intent").

## III. CONCLUSION

For the reasons discussed above, defendant's Motion to Dismiss will be granted by an

Order to be issued with this Memorandum Opinion.

Entered this *10* day of November, 2021.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge